tion was óne, were, by the closing sentence of the section, excluded
from its provisions.

There is no force in the argument that the appellants, elected in
1904, have no standing in court upon this appeal because of the fact
that the title to their office or the other aldermen is not directly chal-
lenged in this action. The decision of this appeal and of the action
necessarily determines their official status, in addition to which they
are "aggrieved parties," within the provisions of section 1294 of the
Code of Civil Procedure, because the order from which this appeal is
taken interferes with them in the discharge of their duties. - It follows,
therefore, that the order must be reversed, and the motion for a tempo-
rary injunction denied, with costs to the appellants.

Order reversed, with $10 costs and disbursements, and motion denied, with
costs. All concur.

(110 App. Div. 760.)

NEW YORK MUT. SAVINGS & LOAN ASS'N v. WESTCHESTER FIRE
INS. CO.

(Supreme Court, Appellate Division, Second Department. January 26, 1906.)

INSURANCE—FIRE POLICY—PROVISION FOR OCCUPANCY—ESTOPPEL.

An insurance company is estopped to claim a forfeiture of a fire policy
under its provision that it shall be void if the building be or become un-
occupied and so remain for 10 days, the general local agent who issued it
knowing when he did so that the tenant and his family had gone away, and
would be absent beyond the end of the 10 days; and it is immaterial that
the agent was also the renting agent of insured, and as such acquired his
knowledge.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§
968, 983.]

Appeal from Trial Term, Westchester County.

Action by the New York Mutual Savings & Loan Association against
the Westchester Fire Insurance Company. From a judgment for de-
fendant, after a trial before a referee, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and JENKS, RICH, and
MILLER, JJ.

George Richards (Woodson R. Oglesby, on the brief), for appellant.
Michael H. Cardoza, for respondent.

HIRSCHBERG, P. J. This action is brought to recover on a fire
insurance policy written by the defendant upon premises belonging to
the plaintiff in the village of White Plains, N. Y. The premises in
question were rented by the plaintiff to a tenant, and were occupied
by the tenant and his family until January 17, 1903. Because of the
inability to procure coal at that time, owing to the existence of the
great coal strike, the tenant then vacated the premises temporarily,
and resided with his family in the city of New York until the build-
ing at White Plains was destroyed by fire. The building referred
to remained unoccupied during all that time. It was not vacant, the
tenant having left his household effects in it. The policy of insurance
was issued on February 6, 1903, but the premium was not paid until

after the fire, which occurred three weeks later. The policy is in the standard form, and the main defense is that it was void by virtue of the provision that it should be void if the building "be or become vacant or unoccupied and so remain for ten days." Attached to the policy was a special rider, stating, in effect, that the insurance on the building and additions thereto was "while occupied as a dwelling." The agent who issued the policy was a general local agent of the defendant, to whom policies were furnished; signed by the defendant's officers, which became binding contracts when countersigned by the agent. This agent was also the renting agent of the plaintiff, and had acted as such in the creation of the tenancy referred to. After the fire he charged the premium on the policy to the rents collected, and remitted to the defendant, without any knowledge on its part of the mode of collection. He resided near, if not actually adjoining, the insured premises, and was well aware at the time of the issuing of the policy that the premises were then unoccupied, and were to remain unoccupied for an indefinite period, depending upon the continuance of the strike. The evidence is sufficient to justify the conclusion that the agent was informed when the tenant and his family left the building that they would be absent at least until the month of April. The learned referee held that the policy was valid in its inception, but became void when the period of 10 days had elapsed from the time it was issued; but I think that that view is in conflict with the logic of the controlling authorities. The knowledge of the agent in this instance was clearly the knowledge of the defendant, and having elected to issue the policy on an unoccupied house, with knowledge that it was to remain unoccupied for a period greater than 10 days, the defendant is estopped from claiming a forfeiture.

In the case of Vanderhoef v. Agricultural Ins. Co., 46 Hun, 328, the policy of insurance contained a provision that if the dwelling house should "cease to be occupied by the owner or occupant in the usual and ordinary manner in which dwelling houses are occupied as such, this policy shall be void until the written consent of the company at the home office is obtained." The agent of the insurance company knew at the time the policy was issued that the house was then practically unoccupied. There was a question whether it was so unoccupied at the time of the fire; but it was held that, even if the house was unoccupied when the fire occurred, yet, as it was in the same condition as to occupancy when the insurance was effected, and that fact was at that time known to the company's agent, his knowledge must be regarded as its knowledge, and that it must be presumed either that the company by mistake omitted to state in its policy that the house was to be unoccupied, or waived the provision as to occupancy, and was accordingly estopped from setting it up. The court said (page 333):

"It is a general principle of the law of agency that the knowledge of the agent is the knowledge of the principal [sic]. Crane & Mosher were the agents of the defendant, to make surveys and take applications for insurance. For those purposes their authority was unlimited. The policy recognized their agency, not only in the body of it, but by the indorsement upon it of their names as agents. The same rules apply to insurance companies as apply in the case of individuals, and a person who is clothed with power to act for them

at all is treated as clothed with authority to bind them as to all matters within the scope of his real or apparent authority. Wood, Fire Ins. 624, § 383, and cases cited. An agent whose business it is to receive and forward to the company applications for insurance is the agent of the company to receive a disclosure of facts, although the company privately instruct him to regard himself in so doing as the agent of the applicant. Flanders on Fire Ins., 103. In Partridge v. Commercial Fire Ins. Co., 17 Hun, 95, it was held that the knowledge of an agent to receive applications was the knowledge of the company, and that the company was bound by his knowledge. The case of Broadhead v. Lycoming Ins. Co., 14 Hun, 452, Chase v. People's Fire Ins. Co., Id. 456, Van Schoick v. Niagara Fire Ins. Co., 68 N. Y. 434, Bennett v. North British Ins., etc., Co., 81 N. Y. 273, 37 Am. Rep. 501, and many others, are to the same effect. See Bennett v. Agricultural Ins. Co., 106 N. Y. 243, 12 N. E. 609."

In Woodruff v. Imperial F. Ins. Co., Lond., Eng., 83 N. Y. 133, the same principle was enforced. The defendant's agent in that case knew at the time the application for the policy was made that the house on the premises was then unoccupied and vacant. It was held that the condition in the policy requiring notice of a special agreement indorsed on the policy in case the building became vacant and unoccupied was waived.

In Short v. Home Ins. Co., 90 N. Y. 16, 43 Am. Rep. 138, the policy contained a provision that, in case the premises "become vacant or unoccupied, and so remain with the knowledge of the assured, without notice to and consent of the company in writing," the policy should be void. The premises were vacant and unoccupied at the time of the insurance, and so continued until the building insured was destroyed by fire. It was held that, notwithstanding the breach of the condition, if the defendant had knowledge of the facts at the time of the issuing of the policy, it was to be presumed that it by mistake omitted to express the fact in the policy, or that it waived the condition, or at least held itself estopped from setting it up, as a contrary inference would impute to it a fraudulent intent to receive pay for an invalid instrument; and that, as the evidence tended to show that the defendant's agent had such knowledge, and made the insurance without regard to the condition of the premises, a refusal to submit the question to the jury was error.

In Manchester v. Guardian Assur. Co., 151 N. Y. 881, 45 N. E. 381, 56 Am. St. Rep. 600, the action was brought to recover the amount alleged to be due on a New York standard fire insurance policy. The defense pleaded was a change of title, which by the terms of the policy required the sanction of the insurance company, manifested by an indorsement on the policy. The general agent of the company had agreed, but failed, to procure such indorsement, and it was held that the insured (his transferee in this case) could nevertheless recover the amount of the policy as damages for the breach of the agreement, on the doctrine of equitable estoppel, by which the defendant was precluded from claiming a forfeiture.

To the like effect are Van Schoick v. Niagara Fire Ins. Co., 68 N. Y. 434, and Blass v. Agricultural Ins. Co., 18 App. Div. 481, 46 N. Y. Supp. 392, affirmed 162 N. Y. 639, 57 N. E. 1104. In the case last cited the court was controlled by the ruling in Manchester v. Guardian Assur. Co., supra, and said (pages 486, 487, of 18 App. Div., and page 395 of 46 N. Y. Supp.):

"It is difficult to see any difference in principle between the case cited and the one at bar. In the present case the agent had power, by indorsing a written consent upon the policy, to insure a dwelling which should be and remain unoccupied for more than ten days. If the agent in the case cited had power by his conduct to estop the defendant without a written consent, the agent in the present case must be deemed to have had power to bind the defendant by a policy on a building which he knew was to be unoccupied beyond the time limited in the policy, and so estop the defendant from interposing its unoccupancy as a defense. The case last cited seems to conflict with Messelback v. Norman, 122 N. Y. 578, 26 N. E. 34, and O'Brien v. Prescott Ins. Co., 134 N. Y. 28, 31 N. E. 265, but it is the latest expression of the Court of Appeals, and must be followed. In Bennett v. Agricultural Ins. Co., 106 N. Y. 243, 12 N. E. 609, affirming 15 Abb. M. C. 234, the policy provided: 'If the dwelling house or houses hereby insured shall cease to be occupied by the owner or occupant in the usual and ordinary manner in which dwelling houses are occupied as such, or be so unoccupied at the time of effecting insurance, and not so stated in the application, then, and in every such case, or in either of said events, this policy shall be null and void until the written consent of the company at the home office is obtained.' The dwelling was unoccupied when the policy was issued, was afterwards occupied for some time, but was unoccupied at the time of the fire. It was found as a fact that the agent who issued the policy knew that the building was unoccupied when the policy was issued, though that fact was not stated in the application, nor was the written consent of the insurer obtained. It was held that, the dwelling being unoccupied at the time when the policy was issued, to the knowledge of the defendant's agent, the policy took effect, and that it was not invalidated by the fact that it was subsequently occupied for a time and then vacated, and remained continuously unoccupied for more than six months preceding the fire. This case is an authority for the position that an agent may bind an insurer by issuing a policy upon a building which he knows to be unoccupied, without stating in the application or indorsing on the policy the fact that the building is unoccupied."

The same principle was reiterated in the case of Gray v. Germania Fire Ins. Co., 155 N. Y. 180, 49 N. E. 675, where it was held that knowledge on the part of an agent of an insurance company at the time of the delivery of a policy prohibiting other insurance without an indorsed consent that the insured intended to procure other insurance does not constitute a waiver of the provision. While the principle was recognized, it obviously had no application to the facts of that case, because of the distinction between the knowledge by an insurer of an existing fact which would render a policy void if continued, and an omission of the insured to give the insurer notice of a subsequent act, contemplated at the time of the insurance, but which omission would invalidate the policy by its express terms. As to the principle controlling the present case, the court therein said (page 184 of 155 N. Y., page 676 of 49 N. E.):

"It is well settled in this state that where an insurance company issues a policy with full knowledge of facts which would render it void in its inception if its provisions were insisted upon, it will be presumed that it by mistake omitted to express the fact in the policy, waived the provision, or held itself estopped from setting it up; as a contrary inference would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument Van Schoick v. Niagara F. Ins. Co., 68 N. Y. 434; Whited v. Germania F. Ins. Co., 76 N. Y. 415, 32 Am. Rep. 330; Richmond v. Niagara F. Ins. Co., 79 N. Y. 230; Woodruff v. Imperial F. Ins. Co., 83 N. Y. 133; Short v. Home Ins. Co., 90 N. Y. 16, 43 Am. Rep. 138; Forward v. Continental Ins. Co., 142 N. Y. 382, 37 N. E. 615, 25 L. R. A. 637; Wood v. American F. Ins. Co., 149 N. Y. 362, 44 N. E. 80, 52 Am. St. Rep. 733; Robbins v. Springfield F. & M. Ins. Co., 149 N. Y. 477, 484, 44 N. E. 159."

The same distinction is to be noted in the case of Herrman v. Adriatic Fire Ins. Co., 85 N. Y. 162, 39 Am. Rep. 644, which appears to have influenced the learned referee in the decision of the case at bar. That case, however, turned chiefly upon the question whether the property was or was not really occupied at the time of the fire, within the meaning of the provisions of the policy, and it was held that fortnightly visits of the plaintiff and his wife to the dwelling house did not constitute an occupation such as is meant when a dwelling house is spoken of. But in that case the house and outhouses were occupied at the time the insurance was effected. The abandonment which was held to work a forfeiture was a subsequent occurrence, and the extent of the decision is that such subsequent event does not work an estoppel, even where it was known by the insurer at the time the contract was made that such temporary abandonment was contemplated.

I do not think that the circumstances under which the agent in this case acquired his knowledge that the premises were unoccupied is controlling, nor is the fact that he was an agent for both parties. He wrote the insurance as the agent of the defendant, and if the plaintiff is to be chargeable with his knowledge of the unoccupancy of the premises, the most that can be said is that both parties knew the fact when the contract was made, and, under the authorities cited, are to be deemed as having contracted with such knowledge, and therefore to be held as intending to create a valid and binding contract notwithstanding the fact of the unoccupancy.

There are other questions presented on this appeal, but the one considered is deemed controlling. Some of the cases cited are actions brought to reform policies, and some of them were brought to recover on policies other than the standard one, but the underlying principle is the same, and I think necessarily leads to the conclusion that the policy in question was issued by the defendant with full knowledge that the premises were unoccupied, and were to remain unoccupied for a period of more than 10 days, and that the defendant accordingly cannot claim a forfeiture of the policy by reason of the breach of the condition.

The judgment should be reversed.

Judgment reversed, and new trial granted, costs to abide the event. All concur.